# IN THE COURT OF APPEALS OF IOWA

No. 16-1391
Filed March 22, 2017

IN RE THE MARRIAGE OF SARAH L. POURROY
AND JARED M. POURROY

Upon the Petition of
**SARAH L. POURROY, n/k/a SARAH L. CLOSE,**
        Petitioner-Appellee,

And Concerning
**JARED M. POURROY,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Louisa County, John G. Linn, Judge.

A father appeals the court's ruling that modified the child support and visitation provision of the dissolution decree. **AFFIRMED.**

Jacob R. Koller and Rae M. Kinkead of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellant.

Lori L. Klockau of Bray & Klockau, P.L.C., Iowa City, for appellee.

Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**VOGEL, Judge.**

Jared Pourroy appeals the district court's decision modifying the child support and visitation provisions of the decree that dissolved his marriage to Sarah Pourroy, n/k/a Sarah Close. Jared claims the district court incorrectly ordered a retroactive increase in his child support obligation, in contravention to the parties' stipulated decree. He also claims the court incorrectly calculated the new child support amount. Finally, he contends the court's modification of the visitation schedule is not in the best interests of the children.

**I. Background Facts and Proceedings.**

The parties dissolved their marriage by a stipulated decree in October 2011. The parties' two children—born 2004 and 2007—were placed in Sarah's physical care, and Jared had visitation six overnights every two weeks. The parties agreed to a substantial downward deviation of Jared's child support.[1] Jared was ordered to pay $200.00 per month during the school year and $275.00 for each of the three months of summer, which averaged out to $218.75 per month.[2] The parties also agree to share equally a number of expenses for the children, including: daycare, school supplies, activities fees, equipment, winter clothing, and haircuts. In the stipulation, the parties agreed the reasons for the downward departure in child support to be: "(1) Jared is providing health insurance for the children; (2) the parties have agreed to a comprehensive

---

[1] Attached to the parties' stipulation was a child support guidelines worksheet that indicated Jared's support obligation under the guidelines would have been $619.00 per month. Thus, under the stipulation, Jared was paying approximately $400 per month less than would have been ordered.

[2] The support obligation was increased during the summer because Sarah provided child care for the children when they were not in school. She had summers off from her work as an elementary school special education teacher.

shared expense provision relating to the children's expenses; and (3) Jared has care of the children for six overnights every 14 days." In addition, the stipulation stated the parties agree the child support amount "shall not be modifiable for five years from the date of the decree." The district court's decree noted the deviation from the guideline amount and approved of the deviation "for the reasons set forth in the stipulation," and the court found the stipulation to be equitable.

Sarah filed a petition to modify the decree in January 2015, seeking to adjust the visitation schedule and the child support. The matter proceeded to trial in March 2016, and the district court issued its decision in June 2016. The court removed Jared's midweek overnight visitation during the summer and increased his child support obligation from $218.75 to $880.00 per month, retroactive to May 2015. Jared filed a posttrial motion, which the district court denied. He now appeals.

## II. Scope and Standard of Review.

Our review of a modification proceeding is de novo, but we give weight to the district court's findings of fact, especially its credibility determinations. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). However, we review the district court's decision to make an increase in child support retroactive for abuse of discretion. *In re Marriage of Thede*, 568 N.W.2d 59, 62–63 (Iowa Ct. App. 1997).

## III. Child Support.

On appeal, Jared challenges the court's modification of his child support obligation, both the retroactivity of the increase and the calculation of the amount.

**A. Retroactivity.** Jared asserts the court should not have made the new child support obligation retroactive to May 2015 since the stipulated decree provided the parties would not modify the support obligation for five years. He asks that we make his new support obligation commence in October 2016.

In the stipulated decree, the reduction in child support was justified because Jared agreed to pay for one-half of the children's expenses and agreed the children would be in his care six overnights every fourteen days. At trial, Sarah testified that while the stipulated decree called for Jared to pay one-half of most of the children's expenses, she stopped asking for reimbursement because he would argue about the amount she spent on the children and she felt it was not worth the argument.

In addition, the stipulated decree referenced Jared's care of the children six overnights every fourteen days as a justification for the reduced child support. Sarah testified Jared rarely keeps the children for the midweek overnight visitation. She entered into evidence a calendar she had kept over the previous five years that noted the children regularly slept at her home on nights they were supposed to be staying with Jared. Even though Jared was designated to have forty percent of the overnights every month, he rarely exercised forty percent and had the children as little as ten percent of the overnights in the summer months. Even when Jared did keep them overnight during the week, Sarah was asked to pick up the children at his house to transport them to school, provide lunch for the children, and furnish the clothing for the children to wear to school. Jared admitted at trial that he had not transported the children to school for three years. During these exchanges on school mornings at Jared's home, the parties do not

speak to each other; in fact Sarah testified it has been five years since the parties have spoken a word to each other face to face, preferring to communicate via text message or email.[3]

In ordering the retroactive support, the district court noted Jared has had a substantial increase in his income and he has not contributed to paying one-half of the shared expenses of the children as anticipated by the stipulated decree. Because both of the justifications for the reduced support in the stipulated decree—the shared expenses and the extensive visitation—failed almost immediately after the decree was entered, we conclude the court did not abuse its discretion in ordering a retroactive increase in child support to begin in May 2015 instead of October 2016. *See Thede*, 568 N.W.2d at 62 (noting the trial court has board discretion to order retroactive child support).

**B. Amount.** Jared also asserts the amount of the new support obligation was improper because the court did not consider the income Sarah receives for her data entry work and the court calculated the incorrect health insurance deduction.

With respect to the health insurance deduction, the testimony at trial established Jared provides health insurance for the children through his employer's "employee/child(ren)" plan. The difference in cost between the employee only plan and the plan that Jared maintains to cover the children is $42.90 per week. The court entered this amount into the child support

---

[3] Sarah described the morning pick up as an awkward situation that the children are anxious about. In the modification order, the court ordered this practice to stop. The court stated it was Jared's responsibility to get the children up, dressed, and fed, and to pack their lunches and transport them to school on the mornings that they wake up at his house.

calculation. However, Jared asserts the language of the child support guidelines rules requires the court to use the "family" health insurance plan amount and not the "employee/child(ren)" plan amount, even though he does not pay the higher "family" plan premiums.

Iowa Court Rule 9.14(5) provides that "[i]n calculating child support, the health insurance premium for the child(ren) is added to the basic support obligation and prorated between the parents as provided in this rule." The rule advises, "The amount of the premium for the child(ren) to be added is the amount of the premium cost for family coverage to the parent or stepparent which is in excess of the premium cost for single coverage, regardless of the number of individuals covered under the policy." Iowa Ct. R. 9.14(5)(b). While the verbiage of the rule does say "family coverage," the intent of the rule is to prorate the actual cost of children's health insurance premium between the parties, not to manipulate the child support amount by using health insurance premiums that are never paid. We determine the district court correctly calculated the cost of the health insurance for the children by subtracting the single plan from the plan that Jared maintains to provide coverage for the children.

With respect to Jared's claim regarding Sarah's income, apart from Sarah's teaching job, she testified she recently started doing data entry work at home. She testified the hours varied greatly based upon the work that was available to her, but her 2015 tax filings indicated she earned $4600. Jared asserts this amount should be added to her income for the purpose of calculating child support. While the district court noted Sarah's extra contract work in its decision, the court did not rule on Jared's claim that this amount should increase

Sarah's monthly income for child support purposes. Jared did not include this claim in his posttrial motion. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Because the district court did not rule on this issue and Jared did not include this issue in his posttrial motion to amend or enlarge, we decline to address this claim due to a lack of error preservation.[4] We affirm the amount of child support ordered by the court.

**V. Visitation.**

Next, Jared maintains the district court should not have modified his visitation schedule for the summer months. The district court removed Jared's midweek overnight visitation along with his Sunday overnight for the summer months. Instead, the court granted him visitation with the children 5 p.m. to 8 p.m. every Wednesday night and every other Thursday night, and on the weekends Jared has visitation, the court ordered the children be returned to Sarah's home by 8 p.m. on Sunday nights, rather than 8 a.m. Monday morning.

While he concedes this is the visitation schedule the parties had informally agreed to for the summer months in the years preceding the modification, Jared asserts the reasons for this informal change no longer exist. Jared asserts he agreed to allow the children to sleep at Sarah's home more during the summer

---

[4] Even if such claim was preserved, we conclude no error occurred. While Sarah earned $4600 from her data entry work in 2015, she testified the availability of this work was not consistent and she had been working for the company for less than one year. We conclude this income is, at this time, too uncertain or speculative to include in the child support calculations. *See In re Marriage of Nelson*, 570 N.W.2d 103, 105 (Iowa 1997) ("All income that is not anomalous, uncertain, or speculative should be included when determining a party's child support obligations.").

because Sarah provided care for the children when they were not in school and allowing them to sleep at Sarah's house during the week allowed them to sleep in longer. However, Jared asserts Sarah revealed at trial that she works for her father on the farm in the summer; thus, he believes the children do not actually gain the intended benefit of sleeping in when at Sarah's house.

Sarah estimated she worked ten to fifteen hours per month for her father, working with his detasseling crew or on landscaping jobs. The amount of work depended on her father's needs. Despite this work, Sarah testified the children still usually get to sleep in during the summer, though the children do not typically sleep past 8:00 a.m. This schedule has worked informally for the parties for the four summers preceding the modification trial. Establishing this schedule by order gives certainty and predictability to the parties and the children, which the district court concluded was in the children's best interests. We affirm the district court's modification of the summer visitation schedule.

## V. Appellate Attorney Fees.

Both parties request an award of appellate attorney fees in the amount of $5000. Iowa Code section 598.36 (2015) provides the court may award attorney fees to the prevailing party in a modification action. We have discretion to award appellate attorney fees under this section. *In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). We consider the needs of the party making the request, the ability of the other party to pay, and whether the requesting party was obligated to defend the district court's decision on appeal. *Id.* We award Sarah $5000 in appellate attorney fees.

**AFFIRMED.**